# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROSE MARIE HALL, | ) | 1:10-CV-01118-LJO-SKO |
| | ) | |
| | ) | **FINDINGS AND RECOMMENDATIONS** |
| Plaintiff, | ) | **REGARDING PLAINTIFF'S SOCIAL** |
| | ) | **SECURITY COMPLAINT** |
| v. | ) | |
| | ) | (Doc. 1) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.

## FACTUAL BACKGROUND

Plaintiff was born in 1958, has an eleventh-grade education, earned her GED, and previously worked as a factory production line worker. (Administrative Record ("AR") 22, 130, 133, 136.) On

December 21, 2005, Plaintiff filed an application for SSI and DIB, alleging disability beginning April 1, 2004, due to knee and back pain, joint and disc disease, and psychotic disorder. (AR 13, 15.)

**A.    Medical Evidence**

**1.    Physical Ailments**

Plaintiff visited Community Medical Center in Fresno a number of times from January 2004 to October 2006, for treatment of different physical injuries, including dental problems and injuries to the hip, ankle, head, knee, and back. (AR 289-320.) In January 2005, Plaintiff was assaulted and received non-urgent care for injuries to her neck and tailbone. (AR 320.) On December 15, 2005, Plaintiff was treated in the emergency room for chemical burns on her hands and feet that she sustained while cleaning with bleach and ammonia. (AR 313.) A few days later on December 18, 2005, Plaintiff received treatment for head injuries inflicted during an altercation. (AR 298.)

On April 3, 2006, Juliane Tran, M.D. conducted an orthopedic evaluation. (AR 171.) Dr. Tran noted generally that Plaintiff did not have any difficulty walking into the exam room, sitting, or getting on and off the exam table. (AR 172.) Dr. Tran determined a diagnostic impression of bilateral knee pain, neck and back pain, and mild right carpal tunnel syndrome. (AR 174.) Dr. Tran provided a functional assessment that Plaintiff should be restricted from work involving frequent right wrist movements, activities involving frequent overhead reaching, and lifting more than fifty pounds occasionally and more than twenty-five pounds frequently. (AR 174.) Plaintiff had no restrictions on sitting, standing, walking, bending, stooping, crouching, climbing, or balancing. (AR 174.) There were also no restrictions on Plaintiff in terms of height, visual, environmental, fingering, or grasping conditions. (AR 174.)

**2.    Mental Ailments**

Plaintiff's earliest treatment record regarding mental conditions is dated November 15, 2004, from Fresno County Human Services System, Mental Health Services ("Fresno County Mental Health"). (AR 268.) Plaintiff had previously been prescribed Perphenazine[1] before that time. (AR

---

[1] Perphenazine is used as an antipsychotic. *Dorland's Illustrated Medical Dictionary* 1441 (31st ed. 2007) [hereinafter *Dorland's*].

235.) Progress notes from December 28, 2004, indicate that Plaintiff had not taken the medication since June of that year. (AR 235.) On that date, Plaintiff was additionally prescribed Vistaril[2] for her anxiety. (AR 235.) In January and February of 2005, Plaintiff's treatment notes indicate that she was preoccupied with finding a service that would provide her with a place to live, and often visited the staff at Fresno County Mental Health to seek help in securing housing. (AR 242-49, 264-67.)

On January 5, 2005, Plaintiff saw Frederick Reinfurt, M.D. of Fresno County Mental Health for a refill of Perphenazine and Vistaril. (AR 233-34.) Plaintiff reported that the medications helped with her anxiety and sleeping habits, and denied that these medicines had any side effects. (AR 234.) On January 19, 2005, Plaintiff attempted to have Dr. Reinfurt refill a prescription for Trazodone, a medication that had been intentionally discontinued.[3] (AR 233.) Plaintiff "accept[ed] that [Dr. Reinfurt would] not refill [the] medication," and the doctor noted that Plaintiff had an adequate amount of her other medications at the time. (AR 233.) On February 14, 2005, Plaintiff visited Dr. Reinfurt for a premature refill on her medications because she had been using them too frequently. (AR 232.) Dr. Reinfurt told Plaintiff that she needed "to make the bottle last a total of a month," but authorized a refill on that one occasion. (AR 232.) Plaintiff consulted with Dr. Reinfurt on February 22, 2005, and Plaintiff stated the medication helped "keep the voices down." (AR 231.) Plaintiff continued to intermittently receive treatment from Fresno County Mental Health through the remainder of 2005. (AR 222-31.)

Plaintiff visited Dr. Reinfurt on February 1, 2006, for a "medication review." (AR 180-81.) Plaintiff discussed her mental condition with the doctor, noting that the Perphenazine helped her hear voices "not as much." (AR 181.) The doctor noted that Plaintiff showed "no overt sign of disordered thought, perception, [or] cognition." (AR 181.) Dr. Reinfurt further opined that Plaintiff was "savvy enough to take advantage [of] (and demand) services." (AR 180.) He then found that Plaintiff did "not appear able to work at [the] time," but also that she did not have any psycho-motor

---

[2] Vistaril is the brand name for hydroxyzine, a "central nervous system depressant, antispasmodic, antihistaminic, and antifibrillatory." *Dorland's* 896, 2095.

[3] Trazodone is an antidepressant and anxiety medication. *Dorland's* 1983.

retardation and needed to show effort at treatment.  (AR 180.)  Dr. Reinfurt spoke with Plaintiff about her plans to begin attending group therapy.  (AR 181.)

On March 3, 2006, Richard Mamula, Ph.D. examined Plaintiff and created a treatment plan. (AR 466-69.)  Dr. Mamula indicated that Plaintiff's symptoms included delusions, hallucinations, disorganized speech, preoccupation with delusions, and paranoid thoughts.  (AR 466.)  Plaintiff had a good understanding of her illness and reported compliance with her medication regime.  (AR 467.) Dr. Mamula assessed Plaintiff with a Global Assessment of Functioning score ("GAF") of forty-seven.[4]  The doctor further diagnosed Plaintiff with paranoid type schizophrenia.  (AR 469.)

On March 7, 2006, Plaintiff returned to Dr. Reinfurt for another medication review. (AR 178.)  The doctor noted that Plaintiff found group therapy helpful.  (AR 178.)  Plaintiff again reported the effectiveness of her medications, stating that when she took her Perphenazine the voices were "a little quieter," and that her "anxiety pills" were helping.  (AR 178.)  Dr. Reinfurt found that Plaintiff's anxiety was still problematic and diagnosed Plaintiff with a psychotic disorder not otherwise specified, but opined that Plaintiff "seem[ed] improved."  (AR 178.)

Ekram Michiel, M.D. examined Plaintiff on April 2, 2006.  (AR 167.)  Dr. Michiel noted that Plaintiff showed no abnormal or bizarre behavior.  (AR 167.)  Plaintiff complained to Dr. Michiel of hearing voices, feeling things touch her, and getting nervous around other people.  (AR167.) Plaintiff also told Dr. Michiel that she felt depressed and slept "a lot" or not "at all" when she was on her medication.  (AR 167.)  The doctor noted that Plaintiff complained of knee and back pain, but also noted that she was on no medications for the pain.  (AR 168.)  Dr. Michiel conducted a mental status examination and found that Plaintiff performed well on the memory, knowledge, concentration, abstract thinking, similarities and differences, insight, and judgment tests.  (AR 168-69.)  The doctor observed that Plaintiff's behavior during the interview did not confirm her claim of hallucinations and delusions, and also noted that she did not respond to internal stimuli.  (AR

---

[4] The GAF scale, also referred to as the Axis V diagnosis, is the consideration of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. Text rev. 2000) [hereinafter "DSM-IV"].  A score between forty-one and fifty indicates that the patient has either serious symptoms or serious impairment in social, occupational, or school functioning. *Id.* at 34.

168.) Assessing Plaintiff with a GAF between sixty and sixty-five,[5] Dr. Michiel opined that Plaintiff was capable of maintaining sufficient attention and concentration to carry out simple job instructions, though not extensively technical or complex instructions. (AR 169.) Further, Plaintiff was "capable of relating appropriately to her co-workers, supervisors, and the public." (AR 169.) Dr. Michiel also noted that Plaintiff could maintain regular workplace attendance and complete a normal workweek without interruptions from her psychiatric condition. (AR 169-70.)

Between April and September 2006, Plaintiff was treated by Maximo A. Parayno, Jr., M.D. (AR 321, 323-29.) On April 25, 2006, Dr. Parayno conducted a psychiatric assessment and examination of Plaintiff. (AR 325-27.) Confusingly, in this assessment Dr. Parayno indicated that Plaintiff was both capable of independent living and incapable of independent living. (AR 327.) Dr. Parayno also found that Plaintiff had poor activities of daily living but was motivated for treatment, had good physical health, and had good communication skills. (AR 327.) The doctor diagnosed Plaintiff with paranoid type schizophrenia and assessed her with a GAF score of forty-five. (AR 327.) Dr. Parayno also saw Plaintiff in May, June, July, and September 2006, as indicated by psychiatric progress notes and medication orders. (AR 321, 323-24.)

On July 25, 2006, state agency psychiatrist Archimedes Garcia, M.D. reviewed Plaintiff's records and opined that Plaintiff would only have moderate limitations on performing detailed tasks, and that she would be able to perform simple repetitive tasks adequately. (AR 274-76.)

Between August 2006 and October 2006, Plaintiff attended group therapy classes at Fresno County Mental Health. On many of these occasions, the department staff reflected positively on Plaintiff, noting things such as good mood, positive behavior, and articulate speech. (AR 188, 189, 194, 201, 202, 209, 213, 217, 218, 219.) Notably, at one point a friend of Plaintiff's was shot and killed, and Plaintiff indicated that her ability to cope with this loss was better than it would have been in earlier times. (AR 205.) During the time between August and October 2006, however, Plaintiff

---

[5] A GAF between sixty-one and seventy indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well" with some meaningful interpersonal relationships. *DSM-IV* 34.

also skipped many of her scheduled classes. (AR 182-87, 190-93, 197-200, 203-04, 206-08, 211-12, 214, 216, 220.)

Between October 2006 and December 2007, Plaintiff attended treatment classes at Turning Point of Central California. (AR 374-474.) During many of these classes, Plaintiff displayed anxiety, depression, and behavior of isolation. (AR 378-82, 384-87, 390-93, 395-400, 405-07, 411, 423, 433, 435, 481-83, 485-87, 490-91, 493-94, 496-97, 500-02, 504, 507-08, 511, 513-16, 519, 521, 530, 548, 551, 553-55, 558, 561-62, 566-67, 569-71, 573-74, 577, 583-86.) On multiple occasions, though, Plaintiff exhibited a good mood and other positive behaviors. (AR 401, 403, 404, 408, 418, 421-22, 426-27, 430-32, 447, 452, 463, 476-78, 517, 527, 531, 538, 541, 545, 547, 564, 576, 580.) In May 2007, Plaintiff began taking classes at Fresno City College. (AR 374-75.)

State agency psychiatrist Robert Y. Hood, M.D. reviewed Plaintiff's records on April 18, 2007. (AR 337-50.) Dr. Hood opined that Plaintiff could concentrate and sustain pace, deal with the public, adapt to change, and complete a normal workweek without interruptions from her psychologically based symptoms. (AR 349-50.)

The Turning Point program closed in December 2007, and by March 2008, Plaintiff had begun receiving services from the Kings View Housing and Recovery Network ("Kings View"). (AR 21, 372-73, 478, 481-83, 492.) At Kings View, Herbert A. Cruz, M.D. examined Plaintiff on April 4, 2008. (AR 369.) Dr. Cruz noted that Plaintiff was "extremely amicable and interactive, although it is evident through a constrained affect." (AR 369.) Plaintiff reported no medication side effects. (AR 369.) The doctor opined that Plaintiff was cooperative, with normal motor activity, speech, cognition, orientation, thought process, mood, intelligence, insight, and judgment. (AR 369.) Dr. Cruz indicated that Plaintiff's thought content included hallucinations and other voices. (AR 369.) Plaintiff was diagnosed with a GAF of twenty-eight,[6] and Dr. Cruz concluded that Plaintiff, "in spite of her recovery[, could] not work due to residual symptoms of her illness." (AR 369.)

---

[6] A GAF between twenty-one and thirty indicates that the patient has behavior that is considerably influenced by delusions or hallucinations, or has serious impairment in communication and judgment, or is unable to function in almost all areas. *DSM-IV* 34.

**B.      Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 77-82, 84-89, 90.)

**1.      Plaintiff's Testimony**

On June 26, 2008, ALJ Christopher Larsen held a hearing where Plaintiff testified that the last time she worked was more than fifteen years prior.  (AR 32.)  According to Plaintiff, she was unable to work presently because of "health and concentration."  (AR 32.)  Plaintiff alleged pain in her knees, back, shoulder, arm, hands, and joints, as well as high blood pressure and headaches.  (AR 34-36.)  After a short bathroom break, Plaintiff stated that she had to use the restroom three to four times per hour as a side effect of her medication.  (AR 38-39.)  Plaintiff further claimed that she could only be on her feet for half an hour without a break, and that she could only sit for fifteen minutes at a time.  (AR 38-39.)  Plaintiff also stated that she needed to lie down and rest for twenty minutes to an hour at least five times a day because of constant pain in her knees, arms, and hands. (AR 33-34.)

In addition to these physical complaints, Plaintiff testified about her mental health problems. Plaintiff alleged that she "constantly" had voices in her head and saw shadows, and that her medication did not alleviate these symptoms.  (AR 43-44.)  Further, Plaintiff stated that she suffered from depression and panic attacks.  (AR 42.)

**2.      Vocational Expert's Testimony**

A vocational expert ("VE") testified at the hearing that a hypothetical person with the same age, education, and work experience as Plaintiff could perform several jobs in the regional and national economy if that person could (1) lift fifty pounds occasionally and twenty-five pounds frequently, (2) stand and walk for six out of eight hours a day, (3) never reach above her shoulders, and (4) perform simple repetitive tasks.  (AR 46-47.)  However, this same hypothetical person with the added limitation of being unable to complete a work day without interruption from psychologically based symptoms would not be able to find work according to the VE, nor would a

hypothetical person who was unable to maintain consistent attention and concentration for other reasons. (AR 47-48.)

Pursuant to Plaintiff's counsel's questioning, the VE testified that the same initial hypothetical person with the added limitation of needing to use the restroom approximately three to four times an hour would also be unable to find any jobs. (AR 48-49.)

### 3.  ALJ's Decision

On September 3, 2008, the ALJ issued a decision finding Plaintiff not disabled since December 21, 2005. (AR 14.)  Specifically, the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity since the alleged onset date of December 21, 2005; (2) has a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functioning capacity ("RFC")[7] to carry fifty pounds occasionally and twenty-five pounds frequently and to stand and walk for six hours in an eight-hour workday, but cannot reach above shoulder level and is mentally limited to simple, repetitive tasks; (5) has no past relevant work; (6) is a "younger individual" under Social Security regulations; (7) has a high school education and can communicate in English; (8) does not have an issue with transferability of job skills because of her lack of past relevant work;  and (9) has the RFC to perform jobs that exist in significant numbers in the national economy. (AR 15-22.)

Plaintiff sought review of this decision before the Appeals Council. (AR 8-9.)  On April 19, 2010, the Appeals Council denied review. (AR 1-4.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

---

[7] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

C.     **Plaintiff's Contentions on Appeal**

On June 19, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting certain medical opinions and that the ALJ erred in determining that Plaintiff has the RFC to perform substantial gainful work that exists in the national economy.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are

demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  *Id.* §§ 404.1520(f), 416.920(f).  If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

A.    **ALJ's Rejection of Physicians' Opinions**

Plaintiff contends that the ALJ failed to give sufficient reasons for rejecting the medical opinion evidence establishing that Plaintiff was unable to work.  Defendant argues that the ALJ properly evaluated the medical record and provided substantial evidence for rejecting the doctors' opinions.

## 1.    Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion.  *Id.*  Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions.  *Id.*  If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record.  *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).  The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

However, the ALJ "need not discuss *all* evidence presented" but instead must only "explain why 'significant probative evidence has been rejected.'"  *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981)).  Further, a medical opinion is considered uncontroverted if all the underlying medical findings are similar.  *See Sprague v. Bowen*, 812 F.2d 1226,1230 (9th Cir. 1987).

## 2.    Analysis

Plaintiff calls attention to the fact that Drs. Reinfurt, Parayno, and Cruz opined that Plaintiff was disabled.  However, Defendant correctly argues that this issue is reserved for the Commissioner, who is responsible for making the determination of whether a claimant meets the statutory definition

of a disability.  20 C.F.R. § 404.1527(e)(1); Social Security Ruling ("SSR") 96-5p.[8]  Opinions on issues reserved for the Commissioner are not considered medical opinions.  20 C.F.R. § 404.1527(e).  "[E]ven when offered by a treating source, [opinions on whether an individual is disabled] can never be entitled to controlling weight or given special significance."  SSR 96-5p.  Accordingly, the findings of Drs. Reinfurt, Parayno, and Cruz that Plaintiff was disabled are not entitled to any special consideration by the ALJ.  Nonetheless, while the determination of disability is reserved to the ALJ, the ALJ must provide specific and legitimate reasons for rejecting a contradicted doctor's opinion.  *See Lester*, 81 F.3d at 830-31; SSR 96-2p.

### a.      Dr. Reinfurt

Plaintiff contends that the ALJ's only reason for rejecting Dr. Reinfurt's opinion was because the issue of disability is reserved to the Commissioner; however, the ALJ's decision provides specific and legitimate reasons for rejecting Dr. Reinfurt's opinion.

The ALJ compared certain findings of Dr. Reinfurt's with other of his findings, indicating inconsistencies.  (AR 19-20.)  The ALJ noted that Dr. Reinfurt found that the medication Perphenazine reduced the symptoms of Plaintiff's psychotic disorder and that the Vistaril controlled her anxiety.  (AR 19-20.)  The decision further states that Dr. Reinfurt indicated that Plaintiff's diagnosis was unclear; Dr. Reinfurt found that, although Plaintiff was distrustful, she clearly was not paranoid.  (AR 20.)  The ALJ noted that Dr. Reinfurt opined that Plaintiff was "'savvy enough to take advantage of (and demand) [social] services.'"  (AR 20.)  Yet after this, Dr. Reinfurt concluded that Plaintiff did not appear to be able to work, despite the fact that Dr. Reinfurt determined that she "needed to show effort at treatment."  (AR 20.)  The ALJ then noted that merely one month after finding that Plaintiff was unable to work, Dr. Reinfurt opined that Plaintiff "seemed improved" and that she was "participating in treatment and making an effort at self-improvement."  (AR 20.)

If a doctor's conclusions are not consistent with his own findings, that is a specific and legitimate reason for rejecting that opinion.  *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)

---

[8] SSRs are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding precedent upon ALJs.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

(per curiam) (treating doctor's conclusory opinion that claimant was disabled was properly rejected by ALJ when it was internally inconsistent and not consistent with doctor's prior medical reports); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") The ALJ properly determined that Dr. Reinfurt's conclusion of disability was inconsistent with his own medical findings; the ALJ thus stated that he would "give little weight" to Dr. Reinfurt's opinion. As such, the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Reinfurt's opinion that Plaintiff was unable to work.

#### b.    Dr. Parayno

Plaintiff asserts that Dr. Parayno's findings, which the ALJ noted as internally inconsistent, do not actually conflict. Defendant argues that the ALJ correctly rejected Dr. Parayno's conclusions because they were contradictory and unsupported by his own medical evidence.

The ALJ determined that Dr. Parayno's opinions were internally inconsistent and unsupported by his own findings. (AR 20.) Dr. Parayno found that most of Plaintiff's behavior, perception, and thinking were within normal limits, but then contradictorily indicated that Plaintiff was simultaneously "capable of independent living" and "incapable of independent living." (AR 20, 326-27.) Dr. Parayno opined that Plaintiff had a GAF of forty-five, which indicates that a patient has either serious symptoms or serious impairment in social, occupational, or school functioning. However, the ALJ noted that Dr. Parayno's mental status exam found that Plaintiff's speech, eye contact, mood, perception, intellectual functioning, orientation, memory, insight, judgment, and thought content were all within normal limits. (AR 20, 326-27.) Further, Dr. Parayno found that Plaintiff's strengths included good communication skills, motivation for treatment, and good physical health. (AR 20, 327.)

As such, Dr. Parayno's opinion that Plaintiff was seriously impaired was not supported by, and was inconsistent with, his own findings. Accordingly, the ALJ gave "little weight" to Dr. Parayno's GAF score"because it is inconsistent with the doctor's assessment of [Plaintiff] on the

mental status exam and with her ability to function within the system to receive services for many years." (AR 20.)

It is appropriate for an ALJ to consider the absence of supporting findings and the inconsistency of conclusions with the physician's own findings in rejecting a physician's opinion. *Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Young*, 803 F.2d at 968. Dr. Parayno's contradictions and internal inconsistencies are specific and legitimate reasons to reject his opinion; therefore, the ALJ properly rejected Dr. Parayno's findings.

### c.   Dr. Cruz

Plaintiff contends that the ALJ failed to provide a specific and legitimate reason for rejecting Dr. Cruz's opinion as being unsupported by clinical findings. Defendant argues that the ALJ properly rejected Dr. Cruz's opinion because it was both inconsistent with the objective medical evidence as well as with the doctor's own findings.

First, the ALJ discounted Dr. Cruz's opinion because the doctor did "not have a lengthy treating relationship" with Plaintiff. (AR 21.) The fact that Dr. Cruz examined Plaintiff only once is not a specific, legitimate reason for rejecting the doctor's opinion. The ALJ must consider the opinions of examining physicians. *See Lester*, 81 F.3d at 830; 20 C.F.R. § 416.927. Therefore, the fact that Dr. Cruz's opinion is based on a one-time examination is not a valid reason for rejecting the opinion.

However, the ALJ found that Dr. Cruz's conclusion that Plaintiff was unable to work was not supported by the doctor's own medical findings. (AR 21.) The ALJ discounted Dr. Cruz's opinion because it was "inconsistent with his own findings on the mental status exam and with [Plaintiff's] ability to function and to provide for her needs by intelligent use of 'the system.'" (AR 21.) The ALJ noted that Dr. Cruz found that Plaintiff's medications were effective, and that her mental exam was normal in every way except for occasional voices. (AR 21.) The ALJ specifically stated that Dr. Cruz found that Plaintiff's "mood was normal, her affective range was normal, her intelligence was normal, and her insight and judgment were normal"; yet in the same report, Dr. Cruz concluded that Plaintiff had a GAF of twenty-eight and, "in spite of her recovery," could not work. (AR 21, 369.)

The ALJ determined that "[t]hese findings do not support [Dr. Cruz's] conclusion." (AR 21.)  The ALJ found that Dr. Cruz's findings were inconsistent and rejected the conclusion that Plaintiff was precluded from all work. (AR 20.)  As noted above, it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion. *Johnson*, 60 F.3d at 1432-33; *Matney ex rel. Matney*, 981 F.2d at 1019; *Magallanes*, 881 F.2d at 751.

Finally, the ALJ stated that the record shows that Plaintiff "was able to perform all activities of daily living and cook for herself.  She was able to express her feelings, appeared happy, was laughing and joking, was well groomed, and liked her living situation." (AR 21.)  The ALJ found that these reported activities of daily living did not support Dr. Cruz's finding that Plaintiff was "unable to function in almost every area." (AR 21.)  Plaintiff's daily activities are a specific and legitimate reason for the ALJ to discount the doctor's opinion regarding Plaintiff's functional limitations. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (claimant's daily activities provide relevant basis for rejecting treating physician's testimony).

### d.    Dr. Mamula

Plaintiff maintains that the ALJ's failure to discuss Dr. Mamula's opinion is fatal error.  Defendant asserts that because Dr. Mamula's opinion was neither significant nor probative, it was unnecessary for the ALJ to specifically address that opinion.

The ALJ "need not discuss *all* evidence presented" but instead must only "explain why 'significant probative evidence has been rejected.'" *Vincent*, 739 F.2d at 1394-95.  Further, a medical opinion is considered uncontroverted if all the underlying medical findings are similar. *See Sprague*, 812 F.2d at 1230.

Dr. Mamula examined Plaintiff on March 3, 2006, finding that Plaintiff's symptoms included delusions and hallucinations. (AR 466-67.)  Dr. Mamula assigned Plaintiff a GAF score of forty-seven, which indicates serious symptoms or serious impairment in social, occupational, or school functioning. (AR 469, *see also DSM-IV* 34.)  Plaintiff has not argued that Dr. Mamula's report was significant or probative for any reason other than the GAF score, nor has Plaintiff argued

that Dr. Mamula's findings were different than those of the other doctors rejected in the ALJ's decision

Dr. Parayno assigned Plaintiff a GAF of forty-five, which is analogous to Dr. Mamula's GAF assessment of forty-seven. (AR 369.) There is thus no significant or probative difference between Dr. Mamula's assessment of Plaintiff's GAF and that of Dr. Parayno. The ALJ determined that Plaintiff's RFC was such that she could perform medium, unskilled work. (AR 23.) As noted above, in making this finding, the ALJ properly rejected or discounted the opinions of Drs. Reinfurt, Parayno, and Cruz. (AR 17-23.) Plaintiff has not pointed out any differences in Dr. Mamula's findings that would make his opinions significant or probative in light of the opinions of the doctors that were rejected by the ALJ. Accordingly, the ALJ was not required to address Dr. Mamula's opinion evidence in the decision.

In sum, because an ALJ "need not discuss *all* evidence presented" but instead must only explain the rejection of significant probative evidence, the ALJ did not err by omitting mention of Dr. Mamula's report in his decision. *Vincent*, 739 F.2d at 1394-95.

**B.     The ALJ's RFC Assessment**

Plaintiff argues that the ALJ's RFC determination in which Plaintiff was able to lift and carry fifty pounds occasionally and twenty-five pounds frequently, sit and stand/walk for six hours in an eight-hour day, and sustain a full work day and week was not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ improperly relied on the opinion of Dr. Michiel, which is contradicted by the findings of Drs. Reinfurt, Mamula, Parayno, and Cruz. Further, the ALJ failed to address Plaintiff's need for bathroom breaks of up to three- to four-times an hour. Defendant asserts that the ALJ properly rejected the conclusions of Drs. Reinfurt, Mamula, Parayno, and Cruz and gave proper weight to Dr. Michiel's opinion that Plaintiff could perform simple, repetitive tasks and relate to coworkers, supervisors, and the general public. The ALJ also properly disregarded Plaintiff's claim concerning her purported need for frequent restroom breaks.

**1.     The ALJ Properly Relied Upon the Findings of Dr. Michiel**

Plaintiff argues that Dr. Michiel's assessment of Plaintiff as an examining physician did not provide substantial evidence to support the ALJ's RFC determination because Dr. Michiel did not

1  have a treatment history with Plaintiff and because his findings were not based upon independent

2  clinical findings that were different from those of the treating physicians.

3    **a.    Legal Standard**

4    "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual

5  functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); see also 20 C.F.R.

6  § 416.927(e)(2) (the determination of the RFC is a decision "reserved to the Commissioner").  Courts

7  will "affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal

8  standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211,

9  1217 (9th Cir. 2005).

10    **b.    Analysis**

11    In determining Plaintiff's RFC, the ALJ determined that Plaintiff could physically carry fifty

12  pounds occasionally and twenty-five pounds frequently and would be able to stand, walk, and sit for

13  six-hours in an eight-hour day.  (AR 16.)  The ALJ also determined that "[m]entally, [Plaintiff] is

14  limited to the performance of simple, repetitive tasks."  (AR 16.)  The ALJ noted that this mental

15  limitation is "consistent with the opinion" of Dr. Michiel, an examining physician who on April 2,

16  2006, performed a comprehensive psychiatric evaluation of Plaintiff.  (AR 18, 167-70.)

17    Plaintiff argues that because Dr. Michiel was an examining doctor who "had no treating

18  relationship" with Plaintiff, Dr. Michiel's opinion "did not rank as high as the treating physicians,

19  like Dr. Reinfurt," and had "no corroboration" with the findings of the other doctors, thus "making

20  Dr. Michiel's opinion the least weighty of the record." (Doc. 13, 9:1-13.)  Plaintiff contends that "Dr.

21  Michiel's opinion did not constitute substantial evidence and could not support the RFC assessment

22  or the final decision."  (Doc. 13, 9:14-15.)

23    This argument is not persuasive.  First, "[t]he opinions of non-treating or non-examining

24  physicians may also serve as substantial evidence when the opinions are consistent with independent

25  clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.  As such, the ALJ may

26  properly consider Dr. Michiel's findings provided that substantial evidence exists to support those

27  findings.  Dr. Michiel performed a mental status examination on Plaintiff and independently tested

28  her memory, fund of knowledge, calculations, concentration, abstract thinking, knowledge of

similarities and differences, and insight and judgment. (AR 168-69.) After such testing, Dr. Michiel

opined that Plaintiff was "capable of maintaining her attention and concentration to carry[-]out

simple job instructions, not extensive technical or complex job instructions. She is capable of

relating appropriately to coworkers, supervisors, and the public. . . . [S]he can maintain regular

attendance in the workplace, [and] complete a normal workday [and] workweek without interruption

from her psychiatric condition." (AR 169-70.) Dr. Michiel also noted that Plaintiff had been

"noncompliant with her medications" prior to the previous year; Dr. Michiel believed that "being on

medication and counseling can improve [Plaintiff's] prognosis." (AR 169.)

Dr. Michiel's opinion is consistent with his own findings and with the record as a whole,

which indicated that Plaintiff improved with medication and treatment (*see, e.g.*, 178 (Dr. Reinfurt

stating that Plaintiff "seemed improved"), 231 (Dr. Reinfurt indicating that Plaintiff had heard "no

voices" since she had been on medication), 326 (Dr. Parayano noted that Plaintiffs "meds [are]

helpful"), 534 (Plaintiff reporting that "her medication has continued to work.")). As such, the ALJ

correctly determined that there was substantial evidence to support Dr. Michiel's findings. The ALJ

noted in his decision that Plaintiff had stated on multiple occasions that her medication either

reduced or eliminated her psychotic symptoms, that she was functioning well while attending

therapy, and that she engaged in constructive activities such as volunteering with her church.

(AR 19.) This evidence supports the ALJ's determination that Dr. Michiel's opinion was consistent

with evidence in the record. Accordingly, the ALJ appropriately relied on Dr. Michiel's findings.

Second, Plaintiff's argument that Dr. Michiel's opinion should be discounted because it is

contradicted by the findings of Drs. Reinfurt, Parayno, and Cruz is predicated on crediting those

findings. However, as noted above, the ALJ properly discounted the conclusions of these doctors

as being inconsistent with the medical record and with their own findings. "[T]he ALJ may reject

the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the

ALJ makes 'findings setting forth specific, legitimate reasons for doing so that are based on

substantial evidence in the record.'" *Thomas*, 278 F.3d at 957. As indicated above, the ALJ provided

such reasons.

1    Third, Plaintiff's assertion that an examining physician must rely on "independent clinical

2    findings" that are "different" from other doctors' in order to constitute substantial evidence is an

3    overly broad statement of the law.  (Doc. 13, 9:4-5 (emphasis omitted)).  Plaintiff cites to *Miller v.*

4    *Heckler*, 770 F.2d 845 (9th Cir. 1985), for this proposition.  In *Miller*, two doctors' opinions were

5    at issue: an examining physician who relied on independent clinical findings, and a treating physician

6    who offered no findings.  *Miller*, 770 F.2d at 849.  The Ninth Circuit found that the ALJ did not

7    have to give weight to the opinion of the treating doctor with no findings; the court then held that

8    the ALJ properly relied on the examining doctor's opinion which was based on independent findings.

9    *Id.*  The court distinguished its case from *Murray v. Heckler*, 722 F.2d 499 (9th Cir. 1983), where

10   "the ALJ had accepted the conclusion of a nontreating physician even though three treating

11   physicians had reached the opposite conclusion based on identical clinical findings."  *Miller*, 770

12   F.2d 849 (emphasis added).  The court stated that if a "nontreating physician relies on independent

13   clinical findings that differ from the findings of the treating physician," *Murray* does not apply.  *Id.*

14   If anything, *Miller* undercuts Plaintiff's argument.  The record indicates that Dr. Michiel

15   conducted his own independent examination of Plaintiff in making his findings.  (*See* AR 167-70.)

16   *Miller* supports the notion that the ALJ properly relied on Dr. Michiel's conclusions because they

17   were based on independent clinical findings.  *Miller*, 770 F.2d at 849.  Further, Dr. Michiel's clinical

18   findings were not "identical" to those of the other doctors.  There were several notable observations

19   that Dr. Michiel made of Plaintiff that differ from the other doctors' findings.  Dr. Michiel noted that

20   Plaintiff displayed no bizarre or abnormal behaviors.  (AR 167.)  Further, he observed that Plaintiff's

21   "behavior during the interview did not confirm [] her claim" of hallucinations and delusions.  (AR

22   168.)  Finally, Dr. Michiel found that Plaintiff gave "no response to internal stimuli during the

23   interview."  (AR 168.)  In addition, Plaintiff admits that "Dr. Michiel's findings were different" since

24   they were not as "negative" and "weighty" as those of the other doctors who opined about Plaintiff's

25   condition.  (Doc. 13, 9:7-8.)  As such, Dr. Michiel did not reach "the opposite conclusion [of the

26   other doctors] based on identical clinical findings," and thus the ALJ properly relied upon Dr.

27   Michiel's findings.  *Miller*, 770 F.2d at 849.

28

1    Lastly, state agency physicians Dr. Garcia and Dr. Hood reviewed Plaintiff's records and

2    affirmed Dr. Michiel's opinions.  (AR 274-76, 337-50.)  Because the ALJ relied on substantial

3    evidence in the record, the ALJ's decision should be affirmed.  *Bayliss*, 427 F.3d at 1217.

4

5    **2.      The VE's Testimony Concerning Plaintiff's Purported Need for Frequent Restroom Breaks**

6    Plaintiff argues that the ALJ may not reject Plaintiff's subjective complaints of frequent

7    restroom usage without addressing that specific testimony and noting the evidence that undermines

8    its veracity.  Plaintiff further asserts that because the VE testified that a hypothetical person who

9    needed to use the restroom four times an hour would be unable to perform any job, the ALJ failed

10   to "assess the RFC correctly."  (Doc. 13, 10:3-4.)  Defendant contends that the ALJ properly

11   discounted Plaintiff's credibility, and was therefore allowed to reject Plaintiff's alleged need for

12   bathroom breaks.  Further, Defendant contends that since the record does not document Plaintiff's

13   allegation that this was a side effect of her medication, the ALJ need not address undocumented side

14   effects.

15   **a.      Legal Standard**

16   Hypothetical questions posed to a VE must set out all the substantial, supported limitations

17   and restrictions of the particular claimant.  *See Magallanes*, 881 F.2d at 756.  If a hypothetical does

18   not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the

19   claimant can perform has no evidentiary value.  *See DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th

20   Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions based on

21   alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the

22   ALJ's determination must be supported by substantial evidence in the record as a whole.  *See Embrey*

23   *v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988).  An ALJ may properly "limit a hypothetical to those

24   impairments that are supported by substantial evidence in the record."  *Osenbrock v. Apfel*, 240 F.3d

25   1157, 1165 (9th Cir. 2001).  A hypothetical question to the VE need not include the claimant's

26   subjective impairments if the ALJ makes findings that the claimant's testimony is "generally not

27   credible."  *Thomas*, 278 F.3d at 960; *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

28   1197 (9th Cir. 2004).

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.*

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### b.  Analysis

Whether the ALJ properly considered the VE testimony excluding Plaintiff's alleged need for bathroom breaks in determining Plaintiff's RFC depends on the credibility of Plaintiff's subjective complaints and on the evidence supporting this symptom's existence. The court must determine whether the ALJ appropriately discounted Plaintiff's credibility. *Thomas*, 278 F.3d at 960; *see also Batson*, 359 F.3d at 1197. The court must also consider whether Plaintiff's need for restroom breaks is an impairment that was supported by substantial evidence in the record.

### i.      Plaintiff's Credibility

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms.   Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. *Vasquez*, 572 F.3d at 591.

First, the ALJ found Plaintiff lacked credibility because of non-compliance with her treatment regimen.  (AR 21-22.)  Plaintiff had a record of skipping her mental health therapy classes and failing to comply with her prescribed medication.  (AR 168, 182-87, 190-93, 197-200, 203-04, 206-08, 211-12, 214, 216, 220 232, 233, 235.)  Failure to follow prescribed or recommended medical treatment is a clear and convincing reason for discrediting Plaintiff's credibility.  *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc).

Second, the ALJ found Plaintiff's statements to be inconsistent.  (AR 21-22.)  In rejecting testimony regarding subjective symptoms, permissible grounds include conflicts or inconsistencies between the claimant's testimony and her conduct or work record, internal contradictions in the testimony, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Thomas*, 278 F.3d at 958-59.  The ALJ may consider whether the Plaintiff's testimony is believable or not.  *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).  Here, the ALJ found that although Plaintiff testified in the disability report that she had not worked since 1992, in her work information form she stated that she worked in 2002; Plaintiff's earnings records also reflect wages from both 2002 and 2003.  (AR 22, 124, 129, 130.) The ALJ further noted that Plaintiff's testimony that she went to school through eleventh grade contradicted her previous statements that she had obtained her GED.  (AR 22, 30, 133.)  The ALJ found that Plaintiff's inconsistencies "diminish" her credibility.  (AR 21.)

Finally, the ALJ noted that the symptoms Plaintiff complained of were poorly documented in the medical record.  (AR 21-22.)  Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light*, 119 F.3d at 792, it is one factor which may be considered with others.  *Moisa*, 367 F.3d at 885; *Morgan*, 169 F.3d at

600.  Here, Plaintiff testified that she could stand for only twenty to thirty minutes at a time and sit for fifteen minutes, but "the conditions that might cause such symptoms are very poorly documented in the record. In fact, there is very little evidence [Plaintiff] has any medically-determinable physical impairment." (AR 21, 38-39; *see, e.g.*, AR 171-75 (no findings in Dr. Tran's physical evaluation to support any sitting, standing, or walking restrictions).)  Because the ALJ found Plaintiff not credible, the ALJ did not need to include Plaintiff's subjective complaint regarding restroom usage in his hypothetical to the VE.  *See Thomas*, 278 F.3d at 960; *see also Batson*, 359 F.3d at 1197.

### ii.  No Substantial Evidence of Plaintiff's Restroom Related Restriction

On multiple occasions throughout her treatment history Plaintiff had the opportunity to complain to her doctors of medication side effects.  Plaintiff failed to mention a frequent need to use the restroom during these visits.  (*See, e.g.*, 171-75, 231, 234, 369-70.)  In fact, Plaintiff does not reference a single instance in the record where this alleged restriction is mentioned prior to the administrative hearing.  (*See* AR 36-37.)  "A claimant bears the burden of proving that an impairment is disabling."  *Miller*, 770 F.2d at 849.  A plaintiff's claim may be rejected when the plaintiff "produced no clinical evidence showing that [medication] use impaired [her] ability to work."  *Id*.

Accordingly, there is no substantial evidence in the record to support the existence of this impairment.  Therefore, the ALJ did not err in declining to incorporate Plaintiff's restroom breaks in his analysis of Plaintiff's RFC.  *Osenbrock*, 240 F.3d at 1165 (ALJ may limit hypothetical to impairments that are supported by substantial evidence in the record).

### CONCLUSIONS AND RECOMMENDATIONS

After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court RECOMMENDS that the Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED.

These Findings and Recommendation are submitted to the district judge assigned to this action, pursuant to the 28 U.S.C. § 636(b)(l)(B) and this Court's Local Rule 304.  Within fifteen (15)

days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:     August 10, 2011                          /s/ Sheila K. Oberto**
                                                    UNITED STATES MAGISTRATE JUDGE